ORDERED UNSEALED on 01/29/2026   s/ andreasar

**SEALED**

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>      v.<br><br>ALBERT GUERRA,<br>      aka "Jaab MB,"<br><br>      Defendant. | Case No.: **26-mj-00174**<br><br>**COMPLAINT FOR VIOLATION OF**<br><br>Title 18, U.S.C., Sec. 1344(2) - Bank Fraud; Title 18, U.S.C., Sec. 2 - Aiding and Abetting; Title 18, U.S.C., Sec. 1957 - Money Laundering; and Title 18, U.S.C., Secs. 982(a)(1) and 982(2)(A) – Criminal Forfeiture<br><br>**UNDER SEAL** |

The undersigned complainant being duly sworn states:

### Count 1

On or about October 28, 2025, within the Southern District of California, Defendant ALBERT GUERRA, aka "Jaab MB," knowingly executed and attempted to execute a material scheme and artifice to obtain money and funds from the custody and control of a financial institution by means of materially false and fraudulent pretenses, representations, and promises, and omissions of material fact, all in violation of 18 U.S.C. §§ 1344(2) and 2.

//

//

//

**Count 2**

On or about November 12, 2025, within the Southern District of California and elsewhere, Defendant ALBERT GUERRA, aka "Jaab MB," did knowingly engage in a monetary transaction in criminally derived property of a value greater than $10,000.00, to wit: a $24,000.00 cash payment for a Tesla Model 3, such property having been derived from specified unlawful activity, that is bank fraud in violation of 18 U.S.C. § 1344(2), in which Defendant GUERRA participated in the transfer of the proceeds from the Southern District of California to another district, all in violation of 18 U.S.C. § 1957(a).

Criminal Forfeiture

The allegations set forth in Counts 1 and 2 of this Complaint are realleged and incorporated as a part hereof for purposes of seeking forfeiture of property pursuant to Title 18, United States Code, Section 982.

Upon conviction of the offense set forth in Count 1 and pursuant to Title 18, United States Code, Section 982(a)(2)(A) Defendant ALBERT GUERRA shall forfeit to the United States all property constituting and derived from proceeds obtained directly and indirectly as a result of the violation.  The property to be forfeited includes but is not limited to a 2021 Tesla Model 3, vehicle identification number 5YJ3E1EA3MF875957.

Upon conviction of the offense set forth in Count 2 and pursuant to Title 18, United States Code, Section 982(a)(1) Defendant ALBERT GUERRA shall forfeit to the United States any property, real and personal, involved in the offense and any property traceable to such property.  The property to be forfeited includes but is not limited to a 2021 Tesla Model 3, vehicle identification number 5YJ3E1EA3MF875957.

The complainant states that this complaint is based on the attached probable cause statement, which is incorporated herein by reference.

*Michael D. Chinn*

_____
Michael Chinn, Task Force Officer
Federal Bureau of Investigation


Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 14th day of January 2026.

_____
KAREN S. CRAWFORD
U.S. Magistrate Judge

3

STATEMENT OF PROBABLE CAUSE

**INTRODUCTION**

1.    A **bank impersonation scam** is a sophisticated scam carried out by fraudsters who contact victims and pretend to be a bank employee with the victim's bank.  These calls often appear to be legitimate as the fraudsters routinely use spoofing technology to make it appear that the call is coming from the victim's bank.  The fake bank employee then informs the victim that there is ongoing fraud on the victim's bank account and that immediate action by the victim is required.  The fraudsters then trick the victims into transferring funds to the fraudster in a variety of ways, including (1) convince the victim to transfer funds to other bank accounts controlled by the fraudster or a coconspirator; (2) convince the victim to withdrawal funds and provide those funds to a purported bank employee for safekeeping; or (3) convince the victim to provide their ATM or credit card to a purported bank employee so that another ATM or credit card can be reissued.  The victims' funds are then quickly depleted by the fraudster or coconspirators.  As outlined below, fraudsters involved in bank impersonation scams often utilize commercial ride-share courier services to pick up the cash and/or debit and credit cards from the victim and deliver those items to the fraudster and coconspirators.

2.    A **commercial ride-share courier service** is a transportation or delivery network company that, for compensation, facilitates on-demand transportation or courier services by matching customers with independent drivers through a digital platform.  Fraudsters use commercial ride-share courier services to pick up fraud funds directly from the victim as these services offer convenience, anonymity, and

mitigates the risk of dealing directly with the victim, all of which make the fraud scheme more difficult to detect and investigate.

3. Since October 2025, the San Diego Police Department (SDPD) and the Federal Bureau of Investigation (FBI) have been investigating a sophisticated bank impersonation scheme where unsuspecting victims are contacted by fraudsters who pretend to be a bank employee with the victim's bank. The fake bank employee then informs the victim that there is ongoing fraud on the victim's bank account and that immediate action by the victim is required to safeguard the victim's funds. The victim is directed to withdrawal funds from their bank account to provide to a purported bank employee for safekeeping; and in other instances, the victim is directed to provide their ATM and/or credit cards to a bank employee to assist with mitigating the ongoing fraud. The fraudsters then use a commercial ride-share courier service to pick up the illicit funds and/or the victim's ATM or credit cards directly from the victim and deliver those items to a coconspirator. The victim's funds are then depleted by the fraudster and other coconspirators.

4. The fraudsters conducting the bank impersonation scam have used the services of both Company A and Company B to facilitate the fraud scheme. Both Company A and Company B provide commercial ride-share courier services throughout the United States, including in the Southern District of California. Company A and B maintain records of communications between its drivers and those customers using its services. Company A and Company B have provided SDPD business records regarding this bank impersonation scheme, which identified multiple subjects operating in various cities throughout the United States, including San Diego, California. Furthermore, Company A and B have

identified multiple ride-share accounts used by the same subject as part of this fraudulent scheme.

5.   At all relevant times herein, Wells Fargo and Bank of America were insured by the Federal Deposit Insurance Corporation, and Navy Federal Credit Union was insured by the National Credit Union Share Insurance Fund.

### Identification of GUERRA

6.   Based on the investigation to date, including victim and witness interviews, review of Company A and B business records, review of surveillance footage, as well as other investigative actions, SDPD and the FBI have identified a network of subjects participating in the fraud scheme.  Specifically, SDPD and the FBI have identified ALBERT GUERRA ("GUERRA"), aka "Jaab MB," and others known and unknown who are traveling to various cities throughout the United States, including San Diego, California to pick up fraud funds and victim's ATM and credit cards as part of this bank impersonation scam.

7.   A review of Company A's records confirmed that GUERRA has a ride-share account named "Jaab MB."  GUERRA's Florida driver license card was uploaded to the Jaab MB ride-share account, which included a photograph of GUERRA and listed GUERRA's date of birth and an address in Miramar, Florida.

8.   Company A's records revealed that on October 26, 2025, GUERRA's "Jaab MB" account ordered a ride with a pickup location in Katy, Texas and a drop off location at the William P. Hobby Airport located in Houston, Texas.  Later that same day, GUERRA's account ordered a ride with a pickup location at the San Diego International Airport and a drop off location at a Marriott hotel located at 8757 Rio San Diego

Drive, San Diego, California ("the Marriott hotel"), which is in the Southern District of California.

9. Business records from Marriott confirmed that GUERRA checked into the Marriott hotel on October 26, 2025, and paid for a one-night stay with points from a Marriott account in his name. There was $50.06 in fees associated with this reservation, which were paid for using a credit card ending in #7592. On October 27, 2025, another reservation was made at the same hotel in GUERRA's name with a check-out date of November 2, 2025; this reservation was paid for with a credit card ending in #7592. Additionally, one additional room was rented under GUERRA'S name from October 30, 2025, to November 2, 2025. This room was paid for using a credit card ending in #2157. The Marriott hotel's surveillance cameras captured GUERRA checking into the hotel on October 26 with three other unidentified individuals. Based on Company A's records, Marriott's business records and surveillance footage, I believe GUERRA traveled from Houston to San Diego on October 26, 2025, stayed at the Marriott hotel, and used his "Jaab MB" ride-share account to receive money from multiple victims of a bank impersonation scam in San Diego.

10. Company A's records revealed that on October 27, 2025, GUERRA's ride-share account ordered a ride with a pickup location at the Marriott hotel and a drop off location at a Walmart located at 3382 Murphy Canyon Road in San Diego. Surveillance footage at the Walmart confirmed that GUERRA arrived at the Walmart with an unidentified female on October 27, 2025.

**GUERRA receives funds from Victim 1**

11. Victim 1 is a 28-year-old resident of Chula Vista, California that fell victim to a bank impersonation scam resulting in a loss of $13,000.00. Victim 1 reported that on October 28, 2025, he received a

7

phone call from an unknown number and spoke to a male subject who claimed to be a Wells Fargo associate. Victim 1 had a bank account with Wells Fargo. The fake Wells Fargo associate informed Victim 1 that there was a recent fraud attempt on his bank account and advised Victim 1 to withdrawal $13,000.00 from his bank account so that his funds could be safeguarded. Victim 1 was transferred between an unknown male and female subject during his interactions with the subjects purporting to be Wells Fargo associates.

12. Victim 1 did as he was instructed and went to a Wells Fargo branch in San Diego, California and withdrew a total of $13,000.00. Victim 1 was then directed to take the $13,000.00 to a Jack-In-The-Box located at 1340 Rosecrans Street in San Diego, where another associate would pick up the money. As directed, Victim 1 went to the Jack-In-The-Box and provided the funds to an individual that arrived in a black Ford Explorer. Victim 1 later contacted an actual Wells Fargo bank employees who informed Victim 1 that he had been scammed and advised Victim 1 to file a police report.

13. Company A's records confirmed that on October 28, 2025, GUERRA's ride-share account ordered a pickup at the Jack-In-The-Box located at 1340 Rosecrans Street with a drop off location at 8660 Rio San Diego Drive in San Diego. The drop off location is an address associated to a Navy Federal Credit Union (NFCU) branch next to the Marriott hotel. At approximately 2:45 p.m., GUERRA used Company A's messaging service to communicate with the ride-share driver and sent the following messages: "My brother is at jack in box – He can't bring me my id and passport – So I told him to give you my stuff – Too bring – Cause I'm at the bank and I need my id and stuff for them to assist me[.]"

14. Company A's records confirmed that the ride arrived at the drop off location on October 28, 2025, at 3:25 p.m. Marriott surveillance footage captured GUERRA departing the hotel at approximately 3:20 p.m. and walking west towards the NFCU branch identified as the drop off location in Company A's records. At approximately 3:39 p.m., GUERRA was again captured on surveillance footage returning to the Marriott hotel. Surveillance footage captured GUERRA holding two cellular telephones as he returned to the hotel. Based on reporting by Victim 1, Company A's records, and surveillance footage of GUERRA departing and returning to the Marriott hotel that corresponds with the delivery of Victim 1's funds, I believe that GUERRA coordinated with Company A's driver to pick up and deliver Victim 1's funds to GUERRA as part of the bank impersonation scam.

**GUERRA receives funds from Victim 2**

15. Victim 2 is a 23-year-old resident of San Diego, California that fell victim to a bank impersonation scam resulting in a loss of $37,000.00. Victim 2 reported that she received a phone call from an individual purporting to be with Bank of America's (BofA) fraud department. Victim 2 was informed by the purported BofA employee that a fraudulent transaction in the amount of $800.00 on her account was just stopped. Victim 2 maintained a BofA account and had previously had fraud on her BofA account, so she was not alarmed. The fake BofA employee instructed Victim 2 to withdrawal $27,500.00 from her bank account as that was the amount of the total purported fraud. Victim 2 was further instructed to lie to the actual bank teller if she was asked questions about the transaction under the guise that it was part of the bank's security check. Victim 2 spoke with both a male and a female pretending to be BofA representatives.

16. As instructed, Victim 2 went to a BofA branch in San Diego, California and withdrew a total of $27,500.00. Victim 2 was then directed to take the $27,500.00 to a Walgreens located on Camino Ruiz in San Diego, where she would be met with another associate named "Steve" to pick up the funds. Victim 2 was informed that "Steve" would be in a black Chevy Volt. Victim 2 advised that the envelope containing her funds was picked up by a white male in his 60s to 70s who seemed confused about the pickup.

17. Company A's records include an audio call between GUERRA and the driver, who GUERRA referred to as "Mr. Steven." During the recorded call, GUERRA stated in part that his "sister" was at a Walgreens, that he was "currently at the Navy Federal right now and I left my ID and passport with my sister," and that he was tracking the driver on Company A's digital application.

18. Company A's records confirmed that on October 30, 2025, at 12:09 p.m., GUERRA's "Jaab MB" ride-share account ordered a pickup at the Walgreens located at 10787 Camino Ruiz in San Diego, with a drop off location at 8660 Rio San Diego Drive in San Diego. Like Victim 1, the drop off location is an address associated to a NFCU branch directly next to the Marriott hotel. Further, Company A's records confirmed that the driver's first name was "Steven."

19. Company A's records confirmed that the ride arrived on October 30, 2025, at 12:45 p.m. The Marriott hotel surveillance captured GUERRA departing the hotel at approximately 12:43 p.m. and walking west (towards the NFCU branch identified as the drop off location in Company A's records). At approximately 12:58 p.m., GUEARRA is again captured on surveillance footage returning to the Marriott hotel. Based on reporting by Victim 2, Company A's records, and surveillance footage of GUERRA

departing and returning to the Marriott hotel that corresponds with the delivery of Victim 2's funds, I believe that GUERRA used his ride-share account to order Company A's driver to pick up and deliver Victim 2's funds to GUERRA as part of the bank impersonation scam.

20. On October 30, 2025, Victim 2 was again contacted by the unknown subjects and informed that a large portion of the funds previously withdrawn from BofA was counterfeit. As directed, Victim 2 went to a different BofA branch located in San Diego and withdrew a total of $9,500.00. Victim 2 was again directed to go to the same Walgreens and wait for a driver that would be arriving in a Toyota SUV/Minivan. Victim 2 advised that the driver that showed up to pick up her funds was Indian and approximately 30 to 40 years of age. Victim 2 advised that this driver also appeared confused.

21. Company A's records confirmed that on October 30, 2025, at 1:36 p.m., GUERRA's "Jaab MB" ride-share account again ordered a pickup at the Walgreens located at 10787 Camino Ruiz. Company A's records confirmed that the driver ended the ride at approximately 2:42 p.m. There are several recorded conversations between GUERRA and the driver, who refused to deliver the package to GUERRA; GUERRA was captured on the Marriott hotel surveillance footage during these recorded calls.

22. For example, during one on the recorded calls, GUERRA stated "it shows you're going the wrong way" and the driver responded "no, no, I can't deliver this package" and "I'm scared." GUERRA, in an angry tone, stated "that's my package" and "that's my stuff." The driver responded, "I go back over there [to the Walgreens] you can pick it up over there . . . I'm scared." GUERRA further pressed the driver to deliver the package, and the driver asked, "can I open it and see?" GUERRA responded, "you cannot do that – that's my stuff," "that has my

passport and everything in it," and "why you trying to open my stuff?" GUERRA was angry that the driver would not deliver the package and stated, "we are on a recorded call," "these calls are being recorded right now," "you don't even want to bring me my stuff," "I have your tag number – your name" and "that's stealing from me." Additional recorded calls between GUERRA and the driver confirmed that the driver would not deliver the package to GUERRA and that GUERRA traveled to the Walgreens to retrieve the package from the driver.

23. At approximately 2:18 p.m., the Marriott hotel surveillance footage captured GUERRA seated in the lobby using two cellular telephones. At approximately 2:27 p.m., surveillance footage captured GUERRA depart the Marriott hotel and enter a sedan that arrived to pick him up. Company A's records do not show a corresponding ride from the Marriott hotel to the location of the driver in possession of Victim 2's funds. Based on Company A's records, including the recorded calls, the Marriott hotel's surveillance footage, as well as my training and experience and my knowledge of this investigation, I believe that GUERRA used another ride-share account to retrieve Victim 2's funds from the driver that refused to deliver those funds.

**GUERRA receives funds from Victim 3**

24. Victim 3 is a 22-year-old resident of San Diego that fell victim to a bank impersonation scam resulting in a loss of $86,300.00. Victim 3 reported that on November 3 and 4, 2025, he received phone calls from an individual purporting to be with NFCU. Victim 3 maintained a bank account with NFCU. The caller informed Victim 3 that there was recent fraud activity associated to his bank account and that his account was not safe to use. Victim 3 was directed to withdrawal all funds from his savings account and deliver the funds in a specified manner. On

12

November 3, 2025, Victim 3 made a total of three separate withdrawals totaling $77,000.00.  At the direction of the unknown scammer, Victim 3 then went to a Walgreens located at 621 I Street in Chula Vista, California, purchased an envelope to put the funds in, and provided the envelope with his funds to a driver dispatched to the Walgreens to pick up the funds.  Victim 3 reported that the driver arrived to pick up the funds in a black Tesla Model 3.[1]  Company A's records do not show a corresponding ride on GUERRA's "Jaab MB" account; however, as explained below, the following day GUERRA's account summoned a black Tesla to retrieve money from Victim 3 at a different Walgreens in Chula Vista.

25.  On November 4, 2025, Victim 3 was again contacted regarding his bank account and informed that the remaining funds in his account were not safe.  At approximately 11:37 a.m., Victim 3 made another withdrawal of $9,300.00 and went to a Walgreens located at 1430 Eastlake Parkway in Chula Vista to wait for an agent to pick up his funds.  Victim 3 reported that the driver arrived to pick up the funds in a blue Hyundai.[2]

---

[1] Victim 3 made two separate deliveries as part of the bank impersonation scam: $77,000.00 on November 3, 2025 and $9,300.00 on November 4, 2025.  Victim 3 reported that a driver of a black Tesla retrieved his money on November 3, 2025, and a driver of a blue Hyundai retrieved his money on November 4, 2025.  Based on Company A's records and Chevron surveillance footage, as explained above, I believe that Victim 3 incorrectly associated the black Tesla to the wrong pick-up.  Specifically, based on Company A's records and Chevron Surveillance footage, I believe that the black Tesla retrieved Victim 3's funds on November 4, 2025.

[2] As explained above, based on Company A's records and Chevron surveillance footage, I believe that Victim 3 incorrectly associated this vehicle to the pick-up location on November 3, 2025.  Specifically, based on Company A's records and Chevron surveillance footage, I believe that the black Tesla was used to pick up Victim 3's funds on November 4, 2025.

26. Company A's records confirmed that on November 4, 2025, GUERRA's ride-share account ordered a pickup at the Walgreens located at 1430 Eastlake Parkway in Chula Vista, with a drop off location at a Chevron located at 4180 Park Boulevard in San Diego, California.  At approximately 12:03 p.m., GUERRA used Company A's messaging service to communicate with the driver and sent the following messages:  "My brother has my birth certificate and social security card he's not going to get in the car he has it packed up from me can u please bring it to me[?]" The driver responded at 12:03 p.m., "I'm on my way."  SDPD obtained surveillance footage from the Chevron gas station, which captured GUERRA walking to the passenger side of a black Tesla Model 3 at approximately 12:35 p.m.  Surveillance footage captured GUERRA retrieving an envelope from the passenger side of the Tesla.

27. Based on reporting by Victim 3, Company A's records, and surveillance footage of GUERRA at the Chevron gas station meeting with a driver in a black Tesla, I believe GUERRA used his ride-share account to order Company A's driver to retrieve and deliver to GUERRA Victim 3's money as part of the bank impersonation scam.

**GUERRA Purchases a Tesla Model 3**

28. On November 12, 2025, GUERRA made a $24,000.00 cash payment for a 2021 Tesla Model 3 at a car dealership in Las Vegas, Nevada.  I have obtained and reviewed the dealership's records, which include a Bill of Sale bearing GUERRA's signature and identifying GUERRA as the buyer.  The business records also include a photocopy of GUERRA's Florida driver license card, which is the same as that saved to GUERRA's "Jaab MB" ride-share account.

//

//

14

**Conclusion**

29.   Based on my training and experience, I believe GUERRA aided and abetted a bank fraud scheme on October 28, 2025, in violation of 18 U.S.C. § 1344(2) and knowingly engaged in a monetary transaction with criminally derived property of a value greater than $10,000.00 when he purchased the 2021 Tesla Model 3, vehicle identification number 5YJ3E1EA3MF875957 with the $24,000.00 cash payment on November 12, 2025. I believe that based upon the foregoing the vehicle is subject to forfeiture to the United States pursuant to Title 18, United States Code, Sections 982(a)(1) and 982(2)(A).

15