ADAM GORDON
United States Attorney
ERIC R. OLAH
California Bar No. 295513
Assistant U.S. Attorney
880 Front Street, Room 6293
San Diego, California 92101
Telephone: (619) 546-7540

Attorneys for the United States



**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br>     v.<br><br>ALBERT GUERRA,<br>     aka "Jaab MB"<br><br>          Defendant. | Case No. 3:26-cr-607-JLS<br><br>PLEA AGREEMENT |

IT IS HEREBY AGREED between Plaintiff, UNITED STATES OF AMERICA, through its counsel, Adam Gordon, United States Attorney, and Eric R. Olah, Assistant U.S. Attorney, and Defendant, ALBERT GUERRA, with the advice and consent of Jeremy Warren, counsel for Defendant, as follows:

I

**THE PLEA**

Defendant agrees to waive indictment and plead guilty to Counts 1 and 2 of an Information, charging Defendant with bank fraud and money laundering, in violation of Title 18, United States Code, Sections 1344(2) and 1957. In addition, Defendant consents to the forfeiture allegations in the Information and consents to the entry of a forfeiture money judgment against him in the amount of $176,300.00 pursuant to Title 18, United States Code, Section 982(a)(2)(A). The forfeiture and restitution are more fully set forth in the attached Financial Addendum.

Def. Initials A.G

## II

## NATURE OF THE OFFENSE

**A.    ELEMENTS EXPLAINED**

Defendant agrees to plead guilty to bank fraud and money laundering. Bank fraud, as charged in Count 1 of the Information, has the following elements:

1.   The defendant knowingly carried out a scheme or plan to obtain money or property from a financial institution by making false statements or promises;

2.   The defendant knew that the statements or promises were false;

3.   The statements or promises were material; that is, they had a natural tendency to influence, or were capable of influencing, a financial institution to part with money or property;

4.   The defendant acted with the intent to defraud; and

5.   The financial institution was federally insured.

Money laundering, as charged in Count 2 of the Information, has the following elements:

1.   The defendant knowingly engaged in a monetary transaction;

2.   The defendant knew the transaction involved criminally derived property;

3.   The property had a value greater than $10,000;

4.   The property was in fact derived from bank fraud, in violation of 18 U.S.C. § 1344(2); and

5.   The transaction occurred in the United States.

**B.    ELEMENTS UNDERSTOOD AND ADMITTED – FACTUAL BASIS**

Defendant has fully discussed the facts of this case with defense counsel. Defendant has committed each of the elements of the crimes and admits that there is a factual basis for his guilty pleas. The following facts are true and undisputed:

2

Def. Initials A.G

1. Defendant knowingly and with the intent to defraud carried out a bank impersonation scheme in the Southern District of California and throughout the United States. Defendant and his criminal associates obtained bank customer information, called victims and falsely claimed to be employees of the victims' banks investigating fraud on the victims' accounts, and convinced victims to withdraw cash and deliver it to purported bank employees in public parking lots. The purported bank employees were in fact just drivers for rideshare services, and Defendant used his rideshare account to order the driver to the victim, retrieve the cash, and then deliver it back to Defendant.

2. The goal of Defendant's scheme was to obtain money under the custody and control of the victims' bank. Defendant's and his associates statements that they were bank employees investigating fraudulent activity on the victims' accounts were false and material in deceiving victims' to withdraw money from federally insured banks and part with it.

3. On October 26, 2025, Defendant flew from Houston, Texas to San Diego, California. In San Diego, Defendant and his criminal associates called local victims and falsely claimed to be bank employees investigating fraud on the victims' accounts. Defendant deceived at least three victims in the greater San Diego area and stole from them at least $136,300.00, including:

   A. On October 28, 2025, Victim 1 received a phone call from someone falsely claiming to be a Wells Fargo employee reporting a purported fraud attempt on Victim 1's account. Victim 1 followed the alleged employee's directions and withdrew $13,000.00 from his bank account and delivered it to a purported bank employee in San Diego, who was actually a rideshare service driver that Defendant ordered to pick up Victim 1's money and deliver it to Defendant.

   B. On October 30, 2025, Victim 2 received a phone call from someone falsely claiming to be a Bank of America employee investigating a fraudulent transaction on Victim 2's account. Victim 2 followed the alleged employee's directions and withdrew $27,500.00 from her account and delivered it to a purported bank employee in San Diego, who was actually a rideshare service driver that Defendant ordered to pick up Victim 2's money and deliver it to Defendant. The same day, Victim 2 received another phone call, withdrew another $9,500.00, and delivered to another rideshare service driver in San Diego that Defendant ordered to pick up Victim 2's money and deliver it to Defendant.

   C. On November 3 and 4, 2025, Victim 3 received phone calls from someone falsely claiming to be a Navy Federal Credit Union employee reporting recent fraud activity on Victim 3's account. Victim 3 followed the alleged employee's

3

Def. Initials *AG*

directions and made four separate withdrawals, totaling $86,300.00, and delivered the cash to two different purported credit union employees, which were actually rideshare service drivers in San Diego (one of which Defendant ordered to pick up Victim 3's money).

4. The above victims are not the only victims of Defendant's scheme. Defendant created and used multiple rideshare service accounts, used multiple cellular phones, and travelled throughout the country to defraud victims. Defendant knew of the elderly age of many of his vulnerable victims, and he frequently and falsely told the rideshare service drivers they were picking up Defendant's "id and social security card" and "stuff" from "my grandma" and "my grandpa."

5. Additionally, Defendant travelled to Portland, Oregon in January 2026. In Portland, Defendant used another person's identification to create a new rideshare service account, which he in turned used to defraud victims in the Portland area, including ordering a pickup of $40,000 cash from Victim 4 on January 16, 2026.

6. On November 12, 2025, in Las Vegas, Nevada, Defendant knowingly engaged in a monetary transaction in criminally derived property of value greater than $10,000.00, to wit: a $24,000.00 cash payment for a Tesla Model 3 that Defendant purchased in his name, such property having been derived from specified unlawful activity, that is bank fraud in violation 18 U.S.C. § 1344(2). Defendant participated in the transfer of the bank fraud proceeds from the Southern District of California to the District of Nevada.

III

**PENALTIES**

Defendant understands that the crimes to which he is pleading guilty carry the following penalties:

**Bank Fraud**

A. a maximum of 30 years in prison;

B. a maximum fine of $1,000,000 or twice the pecuniary gain or loss;

C. a mandatory special assessment of $100;

//

//

4

Def. Initials A.G

D.  a term of supervised release of up to five years. Failure to comply with any condition of supervised release may result in revocation of supervised release, requiring Defendant to serve in prison, upon revocation, all or part of the statutory maximum term of supervised release;

E.  forfeiture of any property constituting or derived from proceeds the defendant obtained directly or indirectly as a result of the offense; and

F.  an order from the Court pursuant to 18 U.S.C. § 3663A(a)(1) that Defendant make mandatory restitution of at least $176,300.00 to the victims of his bank fraud scheme, or the estates of the victims.

### Money Laundering

A.  a maximum of 10 years in prison;

B.  a maximum fine of $250,000 or twice the pecuniary gain or loss;

C.  a mandatory special assessment of $100;

D.  a term of supervised release of up to 3 years. Failure to comply with any condition of supervised release may result in revocation of supervised release, requiring Defendant to serve in prison, upon revocation, all or part of the statutory maximum term of supervised release;

E.  forfeiture of all property, real and personal, involved in the offense and all property traceable to such property; and

F.  an order from the Court pursuant to 18 U.S.C. § 3663A that Defendant make mandatory restitution to the victim(s) of the offense of conviction, or the estate(s) of the victims(s).

## IV

### DEFENDANT'S WAIVER OF TRIAL RIGHTS AND UNDERSTANDING OF CONSEQUENCES

This guilty plea waives Defendant's right at trial to:

A.  Continue to plead not guilty and require the Government to prove the elements of the crime beyond a reasonable doubt;

B.  A speedy and public trial by jury;

C.  The assistance of counsel at all stages;

D.  Confront and cross-examine adverse witnesses;

E.  Testify and present evidence and to have witnesses testify on behalf of Defendant; and,

Def. Initials *AG*

F. Not testify or have any adverse inferences drawn from the failure to testify.

Defendant also knowingly and voluntarily waives any rights and defenses defendant may have under the Excessive Fines Clause of the Eighth Amendment to the United States Constitution to the forfeiture of property in this proceeding or any related civil proceeding, and waives the right to assert now or on appeal, any legal, constitutional, statutory, regulatory, and procedural rights and defenses that he may have under any source of federal or common law, including among others, challenges to personal jurisdiction, extraterritoriality, statute of limitations, venue, and the form and substance of the Superseding Indictment, including specifically any claim of multiplicity or duplicity.

V

**DEFENDANT ACKNOWLEDGES NO PRETRIAL RIGHT TO BE PROVIDED WITH IMPEACHMENT AND AFFIRMATIVE DEFENSE INFORMATION**

Any information establishing the factual innocence of Defendant known to the undersigned prosecutor in this case has been turned over to Defendant. The United States will continue to provide such information establishing the factual innocence of Defendant.

If this case proceeded to trial, the United States would be required to provide impeachment information for its testifying witnesses. In addition, if Defendant raised an affirmative defense, the United States would be required to provide information in its possession that supports such a defense. By pleading guilty Defendant will not be provided this information, if any, and Defendant waives any right to this information. Defendant will not attempt to withdraw the guilty plea or to file a collateral attack based on the existence of this information.

//

6

Def. Initials AG

## VI

## DEFENDANT'S REPRESENTATION THAT GUILTY
## PLEA IS KNOWING AND VOLUNTARY

Defendant represents that:

A. Defendant has had a full opportunity to discuss all the facts and circumstances of this case with defense counsel and has a clear understanding of the charges and the consequences of this plea. By pleading guilty, Defendant may be giving up, and rendered ineligible to receive, valuable government benefits and civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. The conviction in this case may subject Defendant to various collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case; debarment from government contracting; and suspension or revocation of a professional license, none of which can serve as grounds to withdraw Defendant's guilty plea.

B. No one has made any promises or offered any rewards in return for this guilty plea, other than those contained in this agreement or otherwise disclosed to the Court.

C. No one has threatened Defendant or Defendant's family to induce this guilty plea.

D. Defendant is pleading guilty because Defendant is guilty and for no other reason.

## VII

## AGREEMENT LIMITED TO U.S. ATTORNEY'S OFFICE
## SOUTHERN DISTRICT OF CALIFORNIA

This plea agreement is limited to the United States Attorney's Office for the Southern District of California, and cannot bind any other authorities in any type of matter, although the United States will bring this plea agreement to the attention of other authorities if requested by Defendant.

## VIII

## APPLICABILITY OF SENTENCING GUIDELINES

The sentence imposed will be based on the factors set forth in 18 U.S.C. § 3553(a). In imposing the sentence, the sentencing judge must

7

Def. Initials *H.G*

consult the United States Sentencing Guidelines (Guidelines) and take them into account. Defendant has discussed the Guidelines with defense counsel and understands that the Guidelines are only advisory, not mandatory. The Court may impose a sentence more severe or less severe than otherwise applicable under the Guidelines, up to the maximum in the statute of conviction. The sentence cannot be determined until a **presentence report** is prepared by the U.S. Probation Office and defense counsel and the United States have an opportunity to review and challenge the presentence report. Defendant agrees to request that presentence report be prepared. Nothing in this plea agreement limits the United States' duty to provide complete and accurate facts to the district court and the U.S. Probation Office.

IX

**SENTENCE IS WITHIN SOLE DISCRETION OF JUDGE**

This plea agreement is made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B). The sentence is within the sole discretion of the sentencing judge who may impose the maximum sentence provided by statute. It is uncertain at this time what Defendant's sentence will be. The United States has not made and will not make any representation about what sentence Defendant will receive. Any estimate of the probable sentence by defense counsel is not a promise and is not binding on the Court. Any recommendation by the United States at sentencing also is not binding on the Court. If the sentencing judge does not follow any of the parties' sentencing recommendations, Defendant will not withdraw the plea.

//

//

//

//

8

Def. Initials A.G

**X**

**PARTIES' SENTENCING RECOMMENDATIONS**

A.   **SENTENCING GUIDELINE CALCULATIONS**

Although the Guidelines are only advisory and just one factor the Court will consider under 18 U.S.C. § 3553(a) in imposing a sentence, the parties will jointly recommend the following Base Offense Level, Specific Offense Characteristics, Adjustments, and Departures:

| | | |
|---|---|---|
| 1. | Base Offense Level [§2B1.1(a)(1)] | 7 |
| 2. | Loss Exceeding $150,000.00 [§ 2B1.1(b)(1)(F)] | +10* |
| 3. | Substantial Financial Hardship to One Victim [§ 2B1.1(b)(2)(A)(iii)] | +2* |
| 4. | Sophisticated Means [§ 2B1.1(b)(10)(C)] | +2 |
| 5. | Money Laundering in violation of 18 U.S.C. § 1957 [§ 2S1.1(b)(2)(A)] | +1 |
| 6. | Vulnerable Victim [§ 3A1.1(b)(1)] | +2* |
| 7. | Acceptance of Responsibility [§ 3E1.1(a)&(b)] | -3 |

*Defendant understands the investigation into his multi-state bank fraud scheme is ongoing and will likely lead to the identification of additional victims.  Defendant further understands the Government at sentencing will recommend Guidelines calculations and restitution based on the conduct and harm identified at the time of sentencing, including but not limited to increases in the offense level under §§ 2B1.1(b)(1) and (2) and 3A1.1.  For example, if the loss is determined to exceed $1,500,000.00 the Government will recommended a +16 under § 2B1.1(b)(1)(I); if the offense is found to have resulted in substantial financial hardship to 25 or more victims, the Government will recommend a +6 under § 2B1.1(b)(2)(C); and if the offense is found

Def. Initials *A.G*

to have involved large number of vulnerable victims, the Government will recommend a +4 under § 3A1.1(b).

**B.    ACCEPTANCE OF RESPONSIBILITY**

Despite paragraph A above, the United States need not recommend an adjustment for Acceptance of Responsibility if Defendant engages in conduct inconsistent with acceptance of responsibility including, but not limited to, the following:

1.    Fails to truthfully admit a complete factual basis as stated in the plea at the time the plea is entered, or falsely denies, or makes a statement inconsistent with, the factual basis set forth in this agreement;

2.    Falsely denies prior criminal conduct or convictions;

3.    Is untruthful with the United States, the Court or probation officer;

4.    Breaches this plea agreement in any way; or

5.    Transfers or conceals property (or properties) that would otherwise be available for payment of restitution.

**C.    FURTHER ADJUSTMENTS AND SENTENCE REDUCTIONS INCLUDING THOSE UNDER 18 U.S.C. § 3553**

Defendant may recommend additional downward adjustments, departures, including Criminal History departures under USSG § 4A1.3, or sentence reductions under 18 U.S.C. § 3553. The United States will oppose any such adjustments or departures not set out above.

**D.    NO AGREEMENT AS TO CRIMINAL HISTORY CATEGORY**

The parties have no agreement as to Defendant's Criminal History Category.

**E.    "FACTUAL BASIS" AND "RELEVANT CONDUCT" INFORMATION**

The facts in the "factual basis" paragraph of this agreement are true and may be considered as "relevant conduct" under USSG § 1B1.3 and as the nature and circumstances of the offense under 18 U.S.C. § 3553(a)(1).

//

//

10

Def. Initials *A.G*

**F.  PARTIES' RECOMMENDATIONS REGARDING CUSTODY**

The United States will recommend that Defendant be sentenced at the low end of the advisory Guidelines range as calculated by the United States at the time of sentencing, after incorporating a variance under 18 U.S.C. § 3553(a) equal to two offense levels to recognize Defendant promptly returning a signed plea agreement that waives his right to appeal and collateral attack.

Defendant may request any lawful sentence.

**G.  SPECIAL ASSESSMENT / FINE / FORFEITURE / RESTITUTION**

**1.  Special Assessment**

The parties will jointly recommend that defendant pay a special assessment in the amount of $100.00 per felony count of conviction to be paid forthwith at time of sentencing.  Defendant shall pay the special assessment through the office of the Clerk of the District Court by bank or cashier's check or money order made payable to the "Clerk, United States District Court."

**2.  Fine**

The United States will recommend that Defendant be ordered to pay a fine of $100,000.00.  Defendant agrees that the imposition of a fine by the Court shall not be a basis to withdraw the guilty plea or appeal from the sentence.

**3.  Forfeiture & Restitution**

Defendant consents to the forfeiture allegations of the Indictment and consents to the forfeiture of all property seized in connection with this case, including the three Apple iPhones seized from Defendant at the time of his arrest. The parties agree that forfeiture and restitution shall be governed by the provisions of the attached financial addendum.

11

Def. Initials *A.G*

**H. SUPERVISED RELEASE**

If the Court imposes a term of supervised release, Defendant agrees that he will not later seek to reduce or terminate early the term of supervised release until he has served at least 2/3 of his term of supervised release or probation and has fully paid and satisfied any special assessments, fine, criminal forfeiture judgment and restitution judgment imposed by the Court.

**XI**

**DEFENDANT WAIVES APPEAL AND COLLATERAL ATTACK**

Defendant waives (gives up) all rights to appeal and to collaterally attack every aspect of the conviction and sentence, including any restitution order up to $500,000.00. This waiver includes, but is not limited to, any argument that the statute of conviction or Defendant's prosecution is unconstitutional and any argument that the facts of this case do not constitute the crime charged. The only exceptions are that Defendant may collaterally attack the conviction or sentence on the basis that Defendant received ineffective assistance of counsel, and Defendant may appeal a restitution order for any amount over $500,000.00. If Defendant appeals, the Government may support on appeal the sentence or restitution order actually imposed.

**XII**

**BREACH OF THE PLEA AGREEMENT**

Defendant and Defendant's attorney know the terms of this agreement and shall raise, before the sentencing hearing is complete, any claim that the United States has not complied with this agreement. Otherwise, such claims shall be deemed waived (that is, deliberately not raised despite awareness that the claim could be raised), cannot later be made

12

Def. Initials A.G

to any court, and if later made to a court, shall constitute a breach of this agreement.

Defendant breaches this agreement if Defendant violates or fails to perform any obligation under this agreement. The following are non-exhaustive examples of acts constituting a breach:

1. Failing to plead guilty pursuant to this agreement;

2. Failing to fully accept responsibility as established in Section X, paragraph B, above;

3. Failing to appear in court;

4. Attempting to withdraw the plea;

5. Failing to abide by any court order related to this case;

6. Appealing (which occurs if a notice of appeal is filed) or collaterally attacking the conviction or sentence in violation of Section XI of this plea agreement; or

7. Engaging in additional criminal conduct from the time of arrest until the time of sentencing.

If Defendant breaches this plea agreement, Defendant will not be able to enforce any provisions, and the United States will be relieved of all its obligations under this plea agreement. For example, the United States may proceed to sentencing but recommend a different sentence than what it agreed to recommend above. Or the United States may pursue any charges including those that were dismissed, promised to be dismissed, or not filed as a result of this agreement (Defendant agrees that any statute of limitations relating to such charges is tolled indefinitely as of the date all parties have signed this agreement; Defendant also waives any double jeopardy defense to such charges). In addition, the United States may move to set aside Defendant's guilty plea. Defendant may not withdraw the guilty plea based on the United States' pursuit of remedies for Defendant's breach.

13

Def. Initials *A.G*

Additionally, if Defendant breaches this plea agreement: (i) any statements made by Defendant, under oath, at the guilty plea hearing (before either a Magistrate Judge or a District Judge); (ii) the factual basis statement in Section II.B in this agreement; and (iii) any evidence derived from such statements, are admissible against Defendant in any prosecution of, or any action against, Defendant. This includes the prosecution of the charge that is the subject of this plea agreement or any charge(s) that the United States agreed to dismiss or not file as part of this agreement, but later pursues because of a breach by the Defendant. Additionally, Defendant knowingly, voluntarily, and intelligently waives any argument that the statements and any evidence derived from the statements should be suppressed, cannot be used by the United States, or are inadmissible under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, and any other federal rule.

**XIII**

**CONTENTS AND MODIFICATION OF AGREEMENT**

This plea agreement embodies the entire agreement between the parties and supersedes any other agreement, written or oral. No modification of this plea agreement shall be effective unless in writing signed by all parties.

**XIV**

**DEFENDANT AND COUNSEL FULLY UNDERSTAND AGREEMENT**

By signing this agreement, Defendant certifies that Defendant has read it (or that it has been read to Defendant in Defendant's native language). Defendant has discussed the terms of this agreement with defense counsel and fully understands its meaning and effect.

//

14

Def. Initials A.G

## XV

## DEFENDANT SATISFIED WITH COUNSEL

Defendant has consulted with counsel and is satisfied with counsel's representation. This is Defendant's independent opinion, and Defendant's counsel did not advise Defendant about what to say in this regard.

ADAM GORDON
United States Attorney

March 6, 2026
DATED

*Eric R. Olah*
ERIC R. OLAH
Assistant U.S. Attorney

2/27/26
DATED

JEREMY WARREN
Counsel for Defendant

IN ADDITION TO THE FOREGOING PROVISIONS TO WHICH I AGREE, I SWEAR UNDER PENALTY OF PERJURY THAT THE FACTS IN THE "FACTUAL BASIS" SECTION ABOVE ARE TRUE.

2/27/26
DATED

ALBERT GUERRA
Defendant

Approved By:

/s/ Blanca Quintero
BLANCA QUINTERO
Assistant U.S. Attorney

15

Def. Initials A.G